

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-23-2004

# USA v. Johnson

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3796

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Johnson" (2004). *2004 Decisions.* Paper 778.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/778

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 03-3796

———————

UNITED STATES OF AMERICA

v.

TYRONE JOHNSON
a/k/a Tariq Shabazz

Tariq Shabazz aka Tyrone Johnson,
                                    Appellant

———————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 02-cr-00731)
District Judge:  Honorable William H. Yohn, Jr.

———————

Submitted Under Third Circuit LAR 34.1(a)
April 16, 2004

Before:  RENDELL, STAPLETON and LAY*, Circuit Judges.

(Filed: April 23, 2004)

———————

OPINION OF THE COURT

———————

———————

*Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by
designation.

LAY, Circuit Judge.

Tyrone Johnson was found guilty of one count of possession of a firearm by a convicted felon and sentenced to forty-six months in prison followed by three years supervised release. He appeals the District Court's denial of his motion to suppress evidence on the basis that the evidence was obtained and admitted at trial in violation of his Fourth and Fifth Amendment rights. We will affirm.

## I.  BACKGROUND

On the afternoon of July 10, 2001, an individual named David Nurse called 911. Nurse explained that on June 18, 2001, he had been involved in a "road rage" incident in which an individual in a Range Rover with a license plate including the numbers "7222" had pointed a gun at him and threatened him. Nurse further explained that the very same Range Rover was presently parked at 1900 Rittenhouse Square in Philadelphia. Officers Hill, O'Malley, and Cortes responded to the call. Sergeant Hill talked with Nurse, who was at the scene. Nurse explained to Hill the same information he had given the 911 operator. The officers observed that Nurse appeared to be agitated and upset.

The three officers then approached Johnson's Range Rover with their guns drawn, observing that there was an individual seated in the driver's seat of the vehicle. They asked Johnson to show his hands. Johnson rolled down the window. They asked Johnson to get out of the vehicle, which he did. The officers then frisked Johnson. Either

immediately before or during this initial frisk of Johnson, the officers asked if Johnson had a gun, and Johnson replied that he did. Officer O'Malley then found a loaded nine millimeter semiautomatic pistol in Johnson's rear waistband.

Johnson was arrested and charged with one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Prior to trial, Johnson filed an oral motion to suppress both the physical evidence of the gun and his statement to police that he had a gun. After a hearing, this motion was denied. On May 29, 2003, after a two-day trial, a jury found Johnson guilty. The District Court then sentenced him to forty-six months imprisonment, followed by three years supervised release. Johnson now appeals the District Court's denial of his motion to suppress, arguing that the officers did not have reasonable suspicion to stop and frisk him, and that the admission of his response to the question, "do you have a gun?" violated his Fifth Amendment right against self-incrimination.

## II. ANALYSIS

We review the District Court's denial of Johnson's motion to suppress evidence "for clear error as to the underlying factual findings and exercise[] plenary review of the District Court's application of the law to those facts." United States v. Perez, 280 F.3d 318, 336 (3d Cir. 2002).

It has long been established, under Terry v. Ohio, 392 U.S. 1 (1968), and

3

subsequent cases, that an officer "may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion" of criminal activity. Illinois v. Wardlow, 528 U.S. 119, 123 (2000). It is similarly well-established that an informant's tip can provide the reasonable suspicion necessary to support a stop and frisk, if it contains a sufficient "indicia of reliability." Adams v. Williams, 407 U.S. 143, 147 (1972) ("[W]e reject respondent's argument that reasonable cause for a stop and frisk can only be based on the officer's personal observation, rather than on information supplied by another person.").

In assessing whether an informant's tip is sufficiently reliable to provide reasonable suspicion, we must look to the "totality of the circumstances." See Illinois v. Gates, 462 U.S. 213, 230-35 (1983). While Johnson is correct to note that an anonymous tip over the telephone is not itself enough to warrant a stop and frisk under Terry, see Florida v. J.L., 529 U.S. 266, 268-74 (2000), the Supreme Court has recognized that a stop and frisk can be based on a tip from a known informant whose reputation can be assessed and who can be held responsible if his allegations turn out to be fabricated. See Adams, 407 U.S. at 146-47.

In Adams, an officer was approached by a known informant, who told him that an individual seated in a nearby vehicle was carrying narcotics and had a gun at his waist. Id. at 144-45. The officer approached the vehicle and asked the occupant to open the door. Id. at 145. When the occupant rolled down the window instead, the officer reached

4

inside the car and removed the occupant's gun from his waistband. Id. The Supreme Court held that the officer acted properly in responding to the informant's tip. Id. at 146. The Court distinguished this case from an anonymous telephone tip, stressing that the informant was known to the officer, was at the scene, and "might have been subject to immediate arrest for making a false complaint had [the officer's] investigation proved the tip incorrect." Id. at 147. The Court therefore concluded that "the information carried enough indicia of reliability to justify the officer's forcible stop of Williams." Id. The Court also held that the frisk was justified because the officer had "reason to believe that the suspect [was] armed and dangerous." Id. at 146 ("When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, he may conduct a limited protective search for concealed weapons.") (quotations and citation omitted).

This court has recognized these principles and applied them to uphold a stop and frisk where the informant was far less reliable than in the instant case. See United States v. Valentine, 232 F.3d 350, 353-55 (3d Cir. 2000). In Valentine, two officers patrolling a high-crime neighborhood were approached by an individual who explained he had just seen a man with a gun. Id. at 352. The informant described the gunman but would not identify himself, stating that he feared retribution from the armed man and entanglement with the police. Id. at 352-53. The police did not further question or detain the informant, who promptly disappeared, but went in search of the gunman, whom they

5

found and proceeded to stop and frisk, finding a gun. Id. at 353. On appeal, we found the tip to be reliable, distinguishing Florida v. J.L. on the basis that a tip given face to face is more reliable than an anonymous telephone call, even when the informant does not identify himself. Id. at 354. We supported this holding by reasoning that: 1) the officers had the opportunity to assess the informant's credibility and demeanor; 2) the informant was at risk for retaliation by the armed man, who was nearby, making it less likely he would lie; and 3) the informant faced retaliation from the police, who could quickly confirm the tip and knew what the informant looked like. Id. at 354-55.

In light of this precedent, we are compelled to find that the face-to-face tip from Nurse had sufficient indicia of reliability to provide the officers with a reasonable suspicion that Johnson had engaged in criminal activity and was currently armed and dangerous.[1] Just as in Adams and Valentine, the officers here were justified in relying on

---

[1]Johnson also argues that the stop and frisk was impermissible because he was not engaged in any criminal activity at that time. We note, however, that the road rage incident occurring three weeks prior, as related by Nurse, "involv[ed] a threat to the public safety," and was sufficient to support the stop and frisk. See United States v. Hensley, 469 U.S. 221, 229 (1985) ("Particularly in the context of felonies or crimes involving a threat to public safety, it is in the public interest that the crime be solved and the suspect detained as promptly as possible. The law enforcement interests at stake in these circumstances outweigh the individual's interest to be free of a stop and detention that is no more extensive than permissible in the investigation of imminent or ongoing crimes."). Additionally, even without reference to Hensley, we believe that Nurse's tip gave the officers reasonable suspicion that Johnson was armed and dangerous at that time. See Valentine, 232 F.3d at 356-57 (holding that while mere possession of a gun is legal, and therefore will not support a stop and frisk, possession of a gun plus surrounding circumstances suggesting criminal activity will support a stop and frisk). As we stated in Valentine, we believe that "given the large number of potential crimes and the danger

6

the tip from Nurse, who remained at the scene during the stop and was therefore accountable to both Johnson and the police officers if his complaint turned out to be unfounded. Accordingly, the officers did not violate Johnson's Fourth Amendment rights in making an investigatory stop and frisk to verify the validity of Nurse's complaint, and the District Court correctly denied Johnson's motion to suppress.

Johnson also argues that his response to the officers' question, "do you have a gun?" was improperly admitted into evidence in violation of the Fifth Amendment because he was not read his <u>Miranda</u> rights before being asked the question. <u>See</u> <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). We find, however, that the District Court was correct to hold that the officers' question falls under the "public safety" exception of <u>New York v. Quarles</u>, 467 U.S. 649 (1984). In <u>Quarles</u>, the Court held that answers given to questions asked prior to reading a suspect his <u>Miranda</u> warnings will not be excluded from evidence if the purpose of the officers' question was "to secure their own safety or the safety of the public" and not "designed solely to elicit testimonial evidence from a suspect." <u>Id.</u> at 659. Here, we think Johnson's statement was properly admitted because the question was clearly intended to secure the officers' safety and the safety of the public, and not to obtain evidence useful in convicting Johnson.

---

posed by an armed criminal, we think that if the police officers had done nothing and continued on their way after receiving the informant's tip, the officers would have been remiss." <u>Id.</u> at 356.

### III. CONCLUSION

For the above reasons, the decision of the District Court will be AFFIRMED.