*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0021p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

　　　　　　　*Plaintiff-Appellant,*

　　　*v.*

PATRICK WILLIAMS,

　　　　　　　*Defendant-Appellee.*

No. 05-5460

>

---

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 04-20454—Bernice B. Donald, District Judge.

Argued: September 11, 2006

Decided and Filed: January 9, 2007[*]

Before: BOGGS, Chief Judge; MARTIN, Circuit Judge; and OLIVER, District Judge.[**]

---

## COUNSEL

**ARGUED:** E. Greg Gilluly, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellant. Angela L. Pitts, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF TENNESSEE, Memphis, Tennessee, for Appellee. **ON BRIEF:** E. Greg Gilluly, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellant. Randolph W. Alden, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF TENNESSEE, Memphis, Tennessee, for Appellee.

---

## OPINION

---

　　BOGGS, Chief Judge. Patrick Williams moved to suppress two pieces of evidence before his trial on charges of possessing an illegal and unregistered firearm, in violation of 26 U.S.C. § 5861(d), and with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). First, he argued that his statement that he had a gun under his mattress is inadmissible because it resulted from a custodial interrogation conducted without the warnings required by *Miranda v.*

---

[*] This decision was originally issued as an "unpublished decision" filed on January 9, 2007. The court has now designated the opinion as one recommended for full-text publication.

[**] The Honorable Solomon Oliver Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

*Arizona*, 384 U.S. 436 (1966). Second, he argued that the gun itself is inadmissible because police officers lacked the authority to conduct the search uncovering it. The district court granted Williams's suppression motion in its entirety, and the government filed this interlocutory appeal. Because the district court did not make the factual findings necessary to determine whether the public safety exception to the *Miranda* rule applies and whether the search was valid as a search incident to arrest, we vacate and remand.

I

Officer Michael Jackson and three other Memphis police officers sought to execute an outstanding warrant for Williams's arrest on charges of aggravated rape and aggravated robbery. They went to a boarding house, showed two people sitting on the porch a police photo of Williams, and were told that he lived in a room on the second floor. They knocked on the door of that room. At the suppression hearing, Jackson and Williams told very different stories about what happened next.

Jackson testified that he asked the man who responded to his knock on the door to produce identification because the man did not look like the man in the police photo. The man replied that his identification was in the pocket of his pants, on the floor nearby. When the man started to retrieve the pants, Jackson told him to stop. All four officers entered the room, and Jackson asked the man "if anybody else was in the room and if he had any weapon." He replied that no one else was in the room but that he had an old gun under his bed. In response to a second question from Jackson, he specified that the gun was under the mattress. Jackson then placed the man in handcuffs while another officer retrieved a sawed-off shotgun.

Williams, on the other hand, testified that an officer almost immediately handcuffed him and placed him in a chair *in the hallway* outside his room. Meanwhile, the other three officers entered the room and started searching. Williams asked what they were looking for, and an officer answered by asking whether he had any guns or weapons on his person. Williams said no. The officer then asked whether Williams had any weapons in the room, to which Williams responded: "If you say so." Eventually, the officers found the gun, allegedly after one of them saw Williams looking at the bed. According to Williams, the officers never asked him for identification.

Jackson and Williams also presented somewhat inconsistent accounts of the room's geography. Jackson testified that the room was "kind of small," with "[a]bout three feet or less" between the door and the bed. Williams initially described the room as "not very big," but later called it "large." He explained that the room "had no turns [and] no walls."

The district court was not wholly clear as to whose account it credited. Having previously summarized the testimony of Jackson and Williams, it stated:

> Defendant was ordered to sit in a chair near the dresser. Yet, officers, did not advise Defendant of his rights and allegedly proceeded to ask him potentially incriminating questions about weapons or ammunition. Assuming this exchange happened as the officers suggest, the court finds that any statements of Defendant must be suppressed as he was not advised of his rights.

*United States v. Williams*, No. 04-20454 (W.D. Tenn. Feb. 10, 2005) (order granting motion to suppress). This finding contains an internal contradiction. The district court claims that it assumed that the "exchange happened as the officers suggest," but it implicitly rejected at least part of Officer Jackson's story when it concluded that Williams was sitting in a chair, rather than going to retrieve his identification, when questioned. The district court's finding that Williams was seated "near the dresser" does not appear to be supported by either Jackson's testimony or Williams's testimony, since Williams claimed that the officers placed him in a chair in the hallway, not near the dresser.

In the rest of its opinion, it neither explained this discrepancy nor made specific findings of fact relevant to the questions presented in this appeal.

## II

Under the familiar rule of *Miranda v. Arizona*, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. 436, 444 (1966). However, when officers ask "questions necessary to secure their own safety or the safety of the public" as opposed to "questions designed solely to elicit testimonial evidence from a suspect," they do not need to provide the warnings required by *Miranda*. *New York v. Quarles*, 467 U.S. 649, 659 (1984).[1] Here, the government concedes that Williams's alleged statement satisfies the threshold conditions of *Miranda* (*i.e.*, that the officers had Williams in custody and had not advised him of his rights when they asked him whether he had any weapons) but argues that the statement is admissible under the public safety exception announced in *Quarles*.

The public safety exception applies "when officers have a reasonable belief based on articulable facts that they are in danger." *United States v. Talley*, 275 F.3d 560, 563 (6th Cir. 2001). We evaluate the reasonableness of an officer's belief *de novo*, basing our evaluation on objective facts rather than on the officer's subjective state of mind. *Ibid.* Our evaluation takes into consideration a number of factors, which may include the known history and characteristics of the suspect, the known facts and circumstances of the alleged crime, and the facts and circumstances confronted by the officer when he undertakes the arrest. For an officer to have a reasonable belief that he is in danger, at minimum, he must have reason to believe (1) that the defendant might have (or recently have had) a weapon, and (2) that someone other than police might gain access to that weapon and inflict harm with it. The public safety exception applies if and only if both of those two conditions are satisfied and no other context-specific evidence rebuts the inference that the officer reasonably could have perceived a threat to public safety. *See United States v. Estrada*, 430 F.3d 606, 613 (2d Cir. 2005) (finding that the public safety exception applied where officers "had reason to believe" that the suspect was "capable of violence," based on his prior assault convictions; that he might have a gun, based on evidence that he dealt drugs out of the apartment at which he was arrested; and that another person received mail and was present at the apartment where the suspect was arrested); *United States v. Johnson*, 95 F. App'x 448, 449 (3d Cir. 2004) (applying the public safety exception in an investigation of "a 'road rage' incident in which . . . [the suspect] had pointed a gun at [another driver]"); *United States v. DeSumma*, 272 F.3d 176, 181 (3d Cir. 2001) (refusing to apply the public safety exception when "the arresting agents were not advised that the defendant was any more dangerous or violent than a person accused of a typical Ponzi scheme."). *United States v. Reilly*, 224 F.3d 986, 992 (9th Cir. 2000) (applying the public safety exception when officers knew that the suspect was wanted in connection with several armed bank robberies and a violent carjacking and saw the suspect make a suspicious move by brining his hands to his waistband when he still had the capacity to reach and grab nearby objects because he had not been handcuffed); *United States v. Williams*, 181 F.3d 945, 954 n.14 (8th Cir. 1999) (emphasizing that the arresting officers had information that a suspect "had been arrested in the past on a weapons possession charge" and "was dealing drugs out of his apartment").

Though it may be objectively reasonable to believe that Williams had a weapon in his apartment based solely on the violent crimes that he allegedly had committed, aggravated rape and aggravated robbery (satisfying the first condition), that alone is not sufficient to support a finding

---

[1]"*Quarles* remains good law" after the Supreme Court's holding "that the right to a *Miranda* warning is constitutionally based." *United States v. Talley*, 275 F.3d 560, 564-65 (6th Cir. 2001) (discussing *Dickerson v. United States*, 530 U.S. 428 (2000)).

that the officers had an objectively reasonable fear for their safety. To satisfy the second condition, the officers also would have had to believe that someone other than police could access the weapon and inflict harm with it. We cannot determine whether such a belief would have been reasonable without evaluating the credibility of Jackson and Williams as witnesses. If one were to believe that Williams was unrestrained and had turned back into his room to retrieve his identification when Jackson questioned him, as Jackson testified, then the public safety exception might apply, depending on whether those facts and the other facts and circumstances caused the officers to have an objectively reasonable fear for their safety. *Cf. United States v. Ronayne*, No. 94-1374, 1995 U.S. App. LEXIS 10085, *4-*5 (6th Cir. May 2, 1995) (unpublished) (applying the public safety exception when a suspect, though restrained after scuffling with police, could have obtained a weapon that was on his person). Conversely, if one were to believe that Williams was seated outside his room and handcuffed when an officer questioned him, as Williams testified, then the officers plainly could not have had an objectively reasonable fear for their safety and the public safety exception would not apply. *See, e.g., United States v. Brathwaite*, 458 F.3d 376, 382 n.8 (5th Cir. 2006) (refusing to apply the public safety exception when an officer asked the defendant whether he had guns in his house even though, "at the time of questioning, the agents had performed two sweeps of the house and had both occupants of the house in handcuffs"); *United States v. Mobley*, 40 F.3d 688, 693 (4th Cir. 1994) (refusing to apply the public safety exception when officers arrested the defendant while the defendant was naked, found no one else present in a security sweep of his one-room apartment, and knew that the defendant was the apartment's only resident, but asked, while leading defendant away, whether there were any weapons present); *United States v. Raborn*, 872 F.2d 589, 595 (5th Cir. 1989) (refusing to apply the public safety exception when an officer asked a suspect where in his truck he had hidden a gun when "only the police officers had access to the truck").

Even if the officers reasonably believed both that Williams might have had a weapon and that Williams could have used that weapon against them, indications that the officers may have acted pretextually might rebut the presumption that the public safety exception should apply. An officer may rely on the public safety exception only if he has a objectively reasonable belief that he is in danger. *Talley*, 275 F.3d at 563. Though evidence of pretext goes most directly to the officer's subjective beliefs (rather than the objective reasonableness of those beliefs), we consider such evidence to the extent that it informs our understanding of the objective circumstances. Generally, the fact that an officer was willing to manipulate the scene of an arrest in order to gather evidence makes it unlikely that he could have formed an objectively reasonable belief that he was in danger.[2] Here, one might conclude that Jackson asked Williams to retrieve the identification not because he did not recognize Williams, but because he wanted Williams to go back into the room so that the officers could ask about weapons or conduct a broader search. Since the people who directed the officers to Williams's room recognized Williams from the police photo, it is possible that the officers did too. If the finder of fact credits Jackson's version of the facts, it must assess the existence and import of this possible pretext on the part of the officers – along with the rest of the facts and circumstances – to determine whether the public safety exception should apply.

We are not able to evaluate the credibility of witnesses, since we did not see their testimony first-hand. *See United States v. Bailey*, 444 U.S. 394, 414-15 (1980) (stating that it is not "for appellate courts . . . to say that a particular witness spoke the truth or fabricated a cock-and-bull story"). The district court's statement that it assumes Jackson's testimony to be true points one way. Some of its specific factual recitations and the outcome it reached point the other way. We do not have findings on which we can base a clear ruling of law. Thus, we remand the case to permit the

---

[2] In rare circumstances, an officer might underestimate the magnitude of an objectively extant danger, or might give a pretextual order to a suspect and then realize that this order has created an unsafe situation. In those cases, the public safety exception might apply.

district court to make the factual findings necessary to determine whether the public safety exception applies. *See United States v. Taylor*, 997 F.2d 1551, 1554-55 (D.C. Cir. 1993) (holding that, when a district court fails to make clear findings of fact, a court of appeals should remand unless it can affirm based on testimony "either uncontested or found credible by the [d]istrict [c]ourt").

## III

When carrying out a custodial arrest, an officer may conduct, without a warrant, "a search of the arrestee's person and the area 'within his immediate control' – construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Chimel v. California*, 395 U.S. 752, 763 (1969); *see also United States v. Hudson*, 405 F.3d 425, 432 (6th Cir. 2005) (equating "immediate control" with the suspect's "wingspan"). "So long as the defendant had [an] item within his immediate control *near the time of his arrest*, the item remains subject to a search incident to arrest." *Northrop v. Trippett*, 265 F.3d 372, 379 (6th Cir. 2001); *see also United States v. Romero*, 452 F.3d 610, 615 (6th Cir. 2006); *United States v. White*, 871 F.2d 41, 44 (6th Cir. 1989). As such, if the area under the mattress was within Williams's immediate control at any point during or just before his encounter with police, the officers had authority to conduct the search uncovering the gun.[3]

The dimensions of the area within a suspect's immediate control depend on the specific context. *See, e.g., Romero*, 452 F.3d at 615 (approving the search of a closed nightstand "a few feet away" from an arrestee); *United States v. Miller*, 946 F.2d 1344, 1345 (8th Cir. 1991) (permitting a search under a pillow when the arrestee was standing four-and-a-half feet from the bed); *United States v. Hill*, 730 F.2d 1163, 1165 (8th Cir. 1984) (holding invalid the search of a closed suitcase five to ten feet away from the arrestee); *Watkins v. United States*, 564 F.2d 201, 204-05 (6th Cir. 1977) (allowing officers to search under a mattress when the arrestee was in the same room an unspecified distance away). Absent firm factual findings regarding the layout of the room and Williams's position within it throughout his encounter with police, however, we cannot make a confident determination as to whether the officers exceeded the permissible scope of a search incident to arrest. We remand on this issue as well. On remand, the district court must determine from the overall context, consistent with our discussion above, whether the mattress was within Williams's control. In doing so, the court must decide, among other things, whether to credit the testimony of Jackson that the bed was "[a]bout three feet or less" from the door, or whether the bed was at some further or nearer distance.

## IV

For the foregoing reasons, we vacate the district court's order granting Williams's motion to suppress and remand to the district court for further proceedings consistent with this opinion.

---

[3]The district court properly concluded that the search was not valid as a protective sweep. *Williams*, No. 04-20454 (order granting motion to suppress). It did not address the question of whether it was valid as a search incident to arrest, even though the government raised that alternative justification in opposition to the motion to suppress. That argument thus remains pending on remand.