**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 08a0183n.06**
**Filed: April 4, 2008**

**No. 06-4134**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| GLENN WILLIAMS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

_____

BEFORE: MARTIN, GIBBONS, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant Glenn Williams appeals from his convictions for possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841, and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). He argues that the district court erred in denying his motion to suppress evidence obtained during an August 17, 2005, search of his home by a SWAT team of Canton, Ohio, police officers. Specifically, Williams contends that suppression was required because the search warrant was not supported by probable cause, the SWAT team used a no-knock entry without permission by the warrant-issuing magistrate, and because statements he made during his arrest were elicited in violation of *Miranda*. Finding each of these arguments to lack merit, we affirm Williams's convictions.

I.

In 2005, Detective James Daniel, assigned to the Canton Police Department's vice unit and responsible for investigating drug complaints and undercover operations of drug purchases, received "[t]wo or three" complaints of illegal drug activity occurring at 1539 Bryan Avenue in Canton, Ohio. Daniel followed these complaints by speaking with a confidential informant ("CI"), who told him that the resident of the Bryan Avenue home sold crack cocaine from the house. The CI provided reliable information to a different detective during prior unrelated investigations.

Daniel began surveillance on Bryan Avenue on July 22, 2005, watching the house on ten separate dates. During this period, Daniel observed "people stopping basically for short times, many short trips to the residence," which was consistent with his past observations of other houses used to sell crack cocaine. Daniel then used the CI to conduct three controlled purchases of crack cocaine at the Bryan Avenue house. The informant identified Williams as the seller. A search of Williams's criminal history revealed that Williams had been convicted of aggravated robbery in 1997 and later charged, though not prosecuted, for felonious assault and discharging a weapon into a home or school.

Based on this information, Daniel requested a search warrant for the Bryan Avenue house. Because of Williams's criminal history, and because Daniel's experience had informed him that people who sell crack cocaine often carry firearms and present a danger to police officers, Daniel sought a no-knock warrant. The affidavit stated that Daniel performed surveillance and assisted in

the controlled buys from July 22, 2004, until August 16, 2004.  The Canton Municipal Court granted Daniel's request for the warrant.

A SWAT team of Canton police officers executed the search warrant on the Bryan Avenue house on August 17, 2005.  The officers did not knock and announce their presence before entering. They found defendant Williams asleep on a couch in the front room of the house.  After the officers handcuffed Williams and seated him upright on the couch, Detective Ryan Davis noticed Williams reach repeatedly for a ceramic plate that was visible underneath the front of the couch.  Because in Davis's experience such plates are often used for cutting crack cocaine and therefore tend to have razor blades on them, he instructed the police officers to remove Williams from the couch.  As they were doing so, Davis asked Williams whether there were any weapons in the house.  Williams replied that a weapon was upstairs; a subsequent search of the upstairs revealed Williams's response to be false.  As the officers continued to move Williams away from the couch, Williams then stated that a firearm "was actually underneath the couch."  This turned out to be true.

On September 28, 2005, Williams was charged in a two-count indictment in the United States District Court for the Northern District of Ohio, alleging one count of possessing with the intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1), and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).  Williams then filed a pretrial motion to suppress evidence obtained during the August 17 search of his home, contending that the search was not supported by probable cause, that the police improperly failed to knock and announce their presence, and that his statement concerning the location of the gun was taken in violation of

*Miranda*. After the district court denied Williams's motion, Williams entered into a plea agreement wherein he preserved his right to appeal the court's denial of his motion to suppress. The district court entered judgment against Williams and sentenced him to a term of 120 months of imprisonment on each count, to be served concurrently. Williams now appeals.

II.

Williams first argues that any evidence obtained as a result of the search of his home should have been suppressed because the search was not supported by probable cause. On review of the sufficiency of the affidavit, the question "'is whether the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited.'" *United States v. Greene*, 250 F.3d 471, 478 (6th Cir. 2001) (quoting *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)). "Probable cause exists when there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *Greene*, 250 F.3d at 479 (internal quotation omitted). We give the probable cause determination of the warrant-signing magistrate "great deference," as its findings "should not be set aside unless arbitrarily exercised." *United States v. Weaver*, 99 F.3d 1372, 1376 (6th Cir. 1998) (internal quotation omitted). Furthermore, we conduct our review of the magistrate's determination in a "commonsense, rather than hypertechnical manner," *Greene*, 250 F.3d at 479, and judge the sufficiency of the affidavit on the totality of the circumstances, rather than engaging in line-by-line scrutiny. *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004).

Williams's probable cause challenge is predicated on the dates listed in the affidavit that identified when Detective Daniel conducted surveillance of Williams's residence and executed controlled purchase buys through the CI. The affidavit stated that the surveillance operations and controlled purchases occurred in July and August of 2004, one year before the execution of the search warrant. Thus, according to Williams, the evidence supporting Daniel's request for a warrant was stale.

When apprised of the discrepancy between dates, Daniel testified that it was the result of a "clerical error," and that the investigation occurred in 2005 rather than 2004. The district court accepted Daniel's explanation:

> The issue that has been raised by counsel as to the discrepancy in the date, the court is convinced after hearing the testimony, that any discrepancy in the date, primarily the discrepancy that relates to whether or not the events in question, the observations, the controlled buys, occurred in 2004 as opposed to 2005. I believe that matter has been adequately addressed through the testimony, it is clearly a scribner's [sic] error and has no direct bearing on the validity on the search warrant.

We review the district court's finding for clear error, *see United States v. Miggins*, 302 F.3d 384, 397 (6th Cir. 2002), and Williams has not offered any evidence to contradict the court's finding on this issue.

Williams offers no other challenge to the magistrate's probable cause determination, with good reason. The affidavit was supported by a statement from a reliable CI that defendant was selling crack cocaine from his house on Bryan Avenue, by Daniel's detailed surveillance of the house in which he observed repeated vehicle and foot traffic consistent with the sale of crack cocaine, and by three controlled purchases conducted by the CI and supervised by Daniel. This provided more

than a sufficient basis for the magistrate to conclude that a "fair probability" existed that drug contraband would be found at the Bryan Avenue house. Thus, Williams's probable cause challenge to the warrant is without merit.[1]

III.

Williams next argues that the district court should have suppressed the evidence seized during the search of his home because the SWAT team entered Williams's house without first knocking and announcing its presence. The government responds that, even assuming the SWAT team did commit a knock-and-announce violation, Williams's argument is foreclosed by *Hudson v. Michigan*, 547 U.S. 586 (2006).

The government is correct. In *Hudson*, Detroit police officers forcibly entered the defendant's home after waiting only three to five seconds after knocking and announcing their presence. *Id.* at 588. This, conceded the government on appeal, was a knock-and-announce violation. *Id.* at 590. Despite the police's error, the Supreme Court held that the exclusionary rule did not apply because the officers inevitably would have discovered the evidence upon the execution of the valid search warrant they had obtained. *Id.* at 593-94. Rather than suppression of the

---

[1]Even assuming that the affidavit lacked probable cause, there is no evidence indicating that Detective Daniel and the SWAT team executed the search warrant in bad faith or without reasonable grounds to believe that the warrant was properly issued, such that the *Leon* good faith exception would not apply. *See United States v. Leon*, 468 U.S. 897, 925 (1984) (providing for good-faith exception to warrant requirement); *United States v. Rice*, 478 F.3d 704, 711-12 (6th Cir. 2007) (explaining that *Leon* exception is inapplicable where officer's reliance on warrant's validity was not objectively reasonable).

evidence, the Court held that the proper remedy for a failure to knock and announce is a civil action brought pursuant to 42 U.S.C. § 1983. *Id.* at 597-98.

Because suppression is not an available remedy for Williams's knock and announce claim, we need not consider whether the SWAT team was required to announce its presence and therefore deny Williams's claim.

IV.

Finally, Williams argues that the district court should have suppressed his statement made concerning the location of a firearm in his house. The government contends that the statement is admissible under the public safety exception to *Miranda*. We agree.

We explained recently the public safety exception in the following manner:

> Under the familiar rule of *Miranda v. Arizona*, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. 436, 444 (1966). However, when officers ask "questions necessary to secure their own safety or the safety of the public" as opposed to "questions designed solely to elicit testimonial evidence from a suspect," they do not need to provide the warnings required by *Miranda*. *New York v. Quarles*, 467 U.S. 649, 659 (1984).

*United States v. Williams*, 483 F.3d 425, 428 (6th Cir. 2007). This exception applies "when officers have a reasonable belief based on articulable facts that they are in danger." *Id.* (quoting *United States v. Talley,* 275 F.3d 560, 563 (6th Cir. 2001)).

In *Williams*, we set forth the standard the government must satisfy in order for custodial statements, made prior to the issuance of any *Miranda* warnings, to be admissible under the *Quarles* public safety exception. "For an officer to have a reasonable belief that he is in danger," and thus

for the exception to apply, "he must have reason to believe (1) that the defendant might have (or recently have had) a weapon, and (2) that someone other than police might gain access to that weapon and inflict harm with it." *Id.* at 428. We explained further that the public safety exception applies "if and only if" each of these two conditions is met. *Id.* We conclude that the government has met its burden to satisfy the two requirements.

First, the police officers plainly had a reasonable belief that Williams might possess a weapon. Williams had a criminal history that suggested not only that he possessed weapons, but also that he was willing to use force, as evidenced by his aggravated robbery conviction and his arrest for discharging a weapon into a home or school. Moreover, Williams was a suspected dealer of crack cocaine and, as Detective Daniel testified at the motion to suppress hearing, in Daniel's experience "the majority of people who traffic, especially in cocaine, own a gun or have a gun . . . at their ready." We have often recognized the propensity of drug traffickers to carry firearms. *See United States v. Till*, 434 F.3d 880, 884 (6th Cir. 2006) (affirming district court's evidentiary ruling that drugs found in possession of the defendant constituted relevant evidence "because of the propensity of people involved with drugs to carry weapons"); *United States v. Swafford*, 385 F.3d 1026, 1030 (6th Cir. 2004) (holding admissible police officer's testimony that firearms are commonly used in drug trafficking); *see also United States v. Estrada*, 430 F.3d 606, 613 (2d Cir. 2005) ("We have often recognized that firearms are tools of the drug trade that are commonly kept on the premises of major narcotics dealers."). Under these circumstances, it was reasonable for Detective Davis to believe that Williams might have a weapon at the time of the arrest.

It was also reasonable for Davis to believe that someone other than the police might gain access to a weapon and inflict harm with it. Williams argues that because he was not questioned by Davis until after he was placed in handcuffs, he was no longer a threat to grab any potential weapon. The *Quarles* public safety exception, however, has long permitted questions posed to a defendant in handcuffs.

Most notably, in *Quarles* itself, the defendant was chased and placed in handcuffs before the arresting officer noticed that the defendant was wearing an empty holster. *Quarles*, 467 U.S. at 652. When the officer asked the defendant where the gun was, the defendant nodded in the direction of empty cartons and responded that the "gun is over there." *Id.* The officer found a loaded .38-caliber revolver in the direction pointed to by the defendant. *Id.* In recognizing the public safety exception to *Miranda*, the Court held that the defendant's statement and the gun were admissible. *Id.* at 659-60.

Similarly, our sister circuits in interpreting *Quarles* have held that the public safety exception applies to inquiries made when the defendant is handcuffed. *See, e.g., United States v. Lackey*, 334 F.3d 1224, 1228 (10th Cir. 2003); *United States v. Edwards*, 885 F.2d 377, 384 n.4 (7th Cir. 1989); *see also Estrada*, 430 F.3d at 613 (holding that public safety exception applied when police asked, while handcuffing the defendant, whether any guns were present). *But see United States v. Brathwaite*, 458 F.3d 376, 382 n.8 (5th Cir. 2006) (finding public safety exception inapplicable where the defendants were handcuffed outside of their house and police officers asked whether any

guns were "*in the house*"). Thus, the fact that Williams was handcuffed at the time of his statement does not foreclose the application of the *Quarles* exception.

Here, when Davis encountered defendant, he observed Williams reaching towards a ceramic plate underneath the couch, which Davis feared had razor blades on it. As a response to Williams's movement, Davis instructed other police officers to move Williams away from the couch. It was at this time that Davis asked Williams, for "safety reasons," whether there were any weapons involved in order "to make sure there [were] no weapons in [a nearby chair or couch] before we move a suspect to it." It is evident from this context that Davis's question was not posed as an investigatory interrogation, but rather as an attempt to prevent Williams from gaining access to a dangerous weapon. Accordingly, we hold that the district court did not err in denying Williams's motion to suppress his statement and evidence of the officer's discovery of the firearm underneath the couch.

V.

For these reasons, we affirm the denial of Williams's motion to suppress and his resulting convictions.