[Cite as *State v. Keys*, 2023-Ohio-1454.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

AARON KEYS,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 22 MA 0015**

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 21 CR 233

**BEFORE:**
Mark A. Hanni, Cheryl L. Waite, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Reversed, Vacated and Remanded.

---

*Atty. Gina DeGenova*, Mahoning County Prosecutor*,* and *Atty. Edward A. Czopur*, Assistant Prosecuting Attorney, Mahoning County Prosecutor's Office, 21 West Boardman Street, 6th Floor, Youngstown, Ohio  44503, for Plaintiff-Appellee and

*Atty. Rhys Brendan Cartwright-Jones*, 42 N. Phelps Street, Youngstown, Ohio  44503, for Defendant-Appellant.

Dated:  May 1, 2023

**HANNI, J.**

{¶1} Defendant-Appellant, Aaron Keys, appeals from a Mahoning County Court of Common Pleas judgment convicting him of having a weapon under disability with an attached enhanced firearm specification, and carrying a concealed weapon. He was sentenced to a total of 63 months in prison. For the following reasons, Appellant's first assignment of error has merit.

{¶2} On May 13, 2021, Appellant was charged with: having a weapon while under disability in violation of R.C. 2923.13(B), a third-degree felony, with an enhanced firearm specification under R.C. 2941.145(D); and carrying a concealed weapon in violation of R.C. 2323.12 (A)(2) and (F)(1), a fourth-degree felony.

{¶3} On July 23, 2021, Appellant, through counsel, filed a motion to suppress statements that he made while in custody because officers failed to inform him of his constitutional rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966). Appellee filed a response, and the trial court held a hearing on the motion. Youngstown Police Officers Wharry and Villaplana testified on behalf of the State. Officer Wharry testified that on April 19, 2021, he was in his patrol car waiting at a red light at South Avenue and Lucius. (Mot. to Supp. Tr. at 4-5). He testified that he heard a gunshot coming from about a block away from his location. (Mot. to Supp. Tr. at 5-6). He turned on Auburndale and observed a black male, later identified as Appellant, walking toward him wearing black clothing and orange shoes. (Mot. to Supp. Tr. at 5-6). He testified that as soon as Appellant looked at him, Appellant began running away from him south on Auburndale through yards in the neighborhood. (Mot. to Supp. Tr. at 6). Officer Wharry stated that he radioed the police station and he watched Appellant run blocks south until he turned a corner heading back to South Avenue. (Mot. to Supp. Tr. at 6-7). Wharry pulled into Conroy's Party Shop and stopped Appellant. (Mot. to Supp. Tr. at 7-8).

{¶4} Officer Wharry stated that he notified Appellant that he was a Youngstown Police Officer, he had Appellant put his hands in the air, he asked Appellant to turn around, and he patted Appellant down for weapons. (Mot. to Supp. Tr. at 8). Wharry walked Appellant to his police car and told him that he was stopped because Wharry heard a gunshot and saw him take off running. (Mot. to Supp. Tr. at 8).

**{¶5}** Wharry testified that he sat Appellant in the rear of his police car, but he did not put handcuffs on him. (Mot. to Supp. Tr. at 8). He waited for back up to arrive, and then he and Officer Villaplana retraced Appellant's steps and found a hat and a Bluetooth speaker. (Mot. to Supp. Tr. at 9). Wharry identified the hat as the one that he saw Appellant wearing while he was running. (Mot. to Supp. Tr. at 9). Wharry stated that he and Officer Villaplana then went to talk to Appellant. (Mot. to Supp. Tr. at 11-12). Officer Wharry agreed on cross-examination that when Appellant was in the back of his police car, he was not free to leave. (Mot. to Supp. Tr. at 12). He also stated that numerous people were around the area at the time. (Mot. to Supp. Tr. at 9).

**{¶6}** Officer Wharry testified on cross-examination that the ShotSpotter gunshot acoustic location system did not pick up the sound of a gunshot. (Mot. to Supp. Tr. at 11-12). He explained that it could have been during a maintenance window or it just did not pick up the shot. (Mot. to Supp. Tr. at 12). Officer Wharry also estimated that the time that Appellant was in custody was under one hour, although he stated that Appellant made a cell phone call while he was in the back seat and if the cell phone showed the call was made any time prior to 6:36, Appellant would have been in custody for over one hour. (Mot. to Supp. Tr. at 13).

**{¶7}** Officer Villaplana testified that after he heard Wharry's radio broadcast, he arrived at the scene and he and Wharry retraced Appellant's path when he ran away from Wharry. (Mot. to Supp. Tr. at 15). He testified that they discovered the hat and Bluetooth speaker. (Mot. to Supp. Tr. at 15-16). He recalled that it was a sunny day and children and adults were outside as Conroy's Party Shop is located in a residential area. (Mot. to Supp. Tr. at 16).

**{¶8}** Villaplana further testified that when they returned from retracing Appellant's steps, they spoke to Appellant. (Mot. to Supp. Tr. at 16). Villaplana testified that he told Appellant that since Wharry had heard a gunshot and saw Appellant fleeing, "it would be in everyone's best interest if he did drop a gun, to let us know where it would be" because children and adults were outside. (Mot. to Supp. Tr. at 17). Villaplana indicated that Appellant told him that "hypothetically if there was a gun, it was under these logs a few houses away from Conroy's, where we were at." (Mot. to Supp. Tr. at 17).

Case No. 22 MA 0015

Villaplana and Wharry found a gun under the logs with four live rounds and one spent casing loaded in the cylinder. (Mot. to Supp. Tr. at 17).

**{¶9}** Officer Villaplana further testified that once the gun was secured, he reviewed the questions on the PD-11 Firearm Recovery Report with Appellant. (Mot. to Supp. Tr. at 18). He stated that Appellant vaguely answered some of the questions. (Mot. to Supp. Tr. at 20). Villaplana indicated that Appellant's statement about the gun did not appear on the Report because it was made prior to recovering the firearm. (Mot. to Supp. Tr. at 19). He explained that officers review the questions on the Recovery Report with suspects after they recover a firearm and after they give *Miranda* warnings. (Mot. to Supp. Tr. at 19). Villaplana confirmed that Appellant made his gun statement prior to receiving *Miranda* warnings. (Mot. to Supp. Tr. at 20). Appellant did not admit to having a gun when he answered the questions on the firearm report.

**{¶10}** On cross-examination, Officer Villaplana agreed that Appellant was in police custody while he was sitting in the police car. (Mot. to Supp. Tr. at 21). He testified that before he asked Appellant the questions on the Firearm Recovery Report, he had asked Appellant whether he had handled fireworks that day because this helps establish whether gunshot residue would be found on a suspect's hands. (Mot. to Supp. Tr. at 22). Officer Villaplana further testified that he also asked Appellant if he had fired a gun that day because of possible residue findings. (Mot. to Supp. Tr. at 23). Villaplana testified that Appellant responded that he had fired a gun earlier that day. (Mot. to Supp. Tr. at 23).

**{¶11}** Defense counsel asked Officer Villaplana if his questions were designed to establish Appellant's guilt and Villaplana responded that his questions were designed to locate a firearm before a child or other person could find it. (Motion to Supp. Tr. at 26). Villaplana confirmed that Appellant did not receive *Miranda* warnings prior to his questions about the firearm. (Mot. to Supp. Tr. at 26).

**{¶12}** On September 23, 2021, the trial court issued a judgment entry overruling appellant's motion to suppress.

**{¶13}** The matter proceeded to a bench trial on January 18, 2022, where the court heard testimony from Officers Wharry and Villaplana.

**{¶14}** On January 18, 2022, the trial court issued a judgment entry finding Appellant guilty of having a weapon while under disability with the enhanced firearm specification, and carrying a concealed weapon. The court held a sentencing hearing and sentenced Appellant to a total prison term of 63 months: 9 months of imprisonment on the weapon under disability conviction, to be served concurrently with 9 months of imprisonment on the carrying a concealed weapon conviction; and a mandatory prison term of 54 months for the enhanced firearm specification.

**{¶15}** Appellant filed the instant appeal on February 16, 2022 and asserts two assignments of error.

**{¶16}** In his first assignment of error, appellant asserts:

**The trial court erred in denying appellant's motion to suppress**.

**{¶17}** Appellant contends that the trial court erred by denying his motion to suppress statements that he made prior to Officers Wharry and Villaplana informing him of his *Miranda* rights and evidence obtained as a result of those statements. Citing *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, he submits that appellate review of a motion to suppress involves a mixed question of law and fact. Appellant contends that we defer to the trial court's findings of fact if competent, credible evidence exists to support those findings. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist. 1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). Appellant further submits that once we accept those facts as true, we must apply a de novo review and independently determine as a matter of law whether the trial court met the applicable standard. *Burnside, supra* at 155; *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist. 1997).

**{¶18}** Appellant asserts that he was in police custody when Officer Wharry placed him in the back of the cruiser. He contends that since he was subjected to a custodial interrogation and not informed of his *Miranda* warnings, the trial court should have suppressed any incriminating statements that he made to Officer Villaplana before he was Mirandized. These statements include Appellant stating that he had fired a gun earlier on the day of his arrest and his statement that "hypothetically if there was a gun, it was under these logs a few houses away from Conroy's." He contends that the gun

should also have been suppressed because it was discovered as a result of the illegally obtained statements.

**{¶19}** Appellee agrees to the appellate standards of review set forth by Appellant, but asserts that the trial court correctly denied the motion to suppress. Appellee concedes that Appellant was in police custody. However, Appellee contends that officers were operating under the public safety exception to providing *Miranda* warnings before questioning appellant about the firearm. Citing *New York v. Quarles*, 467 U.S. 649, 659, 104 S.Ct. 2626, 81 L.E.2d 550 (1984) and *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, Appellee submits that the public safety exception allows police officers to question defendants in custody before providing them *Miranda* warnings if the questions relate to protecting the police officers or the safety of others.

**{¶20}** Applying the appropriate standards of review, we find that the public safety exception does not apply in this case. Moreover, we find that the trial court's decision on the motion to suppress relied upon facts that do not exist in this case, rendering it lacking in competent, credible evidence.

**{¶21}** The Fifth Amendment of the United States Constitution provides that "No person * * * shall be compelled in any criminal case to be a witness against himself." In *Miranda v. Arizona*, the United States Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. 436 at 444, 86 S.Ct. 1602. The Court held that when a defendant is subject to a custodial interrogation, he must be informed of his protections, including: the right to remain silent; that any statement he may make could be used against him as evidence; the right to counsel; the right to appointed counsel if he is unable to afford counsel; and the right for police questioning to cease if he begins answering questions and wishes to stop in order to consult with counsel. *Id.*

**{¶22}** In *Quarles,* the United States Supreme Court recognized "the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination." 467 U.S. at 659, 104 S.Ct. 2626, 81 L.E.2d 550. Accordingly, the Court

held that officers may ask defendants in custody necessary questions in order to ensure police safety and the safety of others without providing *Miranda* warnings. *Id.*

{¶23} In *State v. Maxwell*, the Ohio Supreme Court adopted the Sixth Circuit Court of Appeals' standard regarding the applicability of the public safety exception. 139 Ohio St.3d 12, 2014-Ohio-1019, ¶ 117, citing *U.S. v. Williams*, 483 F.3d 425, 428 (6th Cir. 2007). The Sixth Circuit held that in order for the *Quarles* public safety exception to apply, the officer must have had "a reasonable belief that he is in danger," which is established by showing that the officer had "reason to believe (1) that the defendant might have (or recently have had) a weapon, and (2) that someone other than police might gain access to that weapon and inflict harm with it." *Williams, supra*.

{¶24} In *State v. Withrow*, 7th Dist. Carroll County No. 21 CA 0950, 2022-Ohio-2850, 194 N.E.3d 804, we applied the test in *Maxwell* and determined that the public safety exception did not apply to statements made by a defendant in response to a number of compound, vague, and continuing questions by an officer. We found that there was "nothing to suggest that Appellant owned or had access to a weapon, or had a history of using weapons during drug deals." We further held under the second prong of *Maxwell,* that even if a weapon was present in the car, the defendant and the driver of the car had been removed from the car and handcuffed, and thus any possible public or officer threat to safety was removed when they were questioned and were handcuffed.

{¶25} Neither party challenges whether Appellant was in police custody. The issue is whether the public safety exception applies to the questioning of Appellant before Villaplana provided *Miranda* warnings. We find that it does not.

{¶26} In *Quarles*, officers were on road patrol when a woman approached their car and told them that a black male had just raped her. She identified the male as six feet tall and wearing a black jacket with "Big Ben" in yellow letters on the back of the jacket. She told officers that the male had just entered a nearby supermarket and had a gun.

{¶27} The victim drove with the officers to the supermarket and one of the officers went in while the other radioed for assistance. The officer inside located the defendant by the victim's description, and he saw the defendant run immediately toward the back of the market upon seeing the officer. The officer was the first to approach the defendant,

and he frisked him for weapons. Upon doing so, he located an empty shoulder holster on the defendant. After the officer handcuffed the defendant, he asked the defendant where the gun was. The defendant nodded his head in the direction of some empty cartons and told the officer the location of the gun. He thereafter stated that he owned the gun.

**{¶28}** The United States Supreme Court held that a narrow public safety exception exists to questioning suspects before informing them of their *Miranda* rights. 467 U.S. at 651, 104 S.Ct. 2626, 81 L.E.2d 550. The Court held that requiring officers to notify defendants of their *Miranda* rights before asking about the location of a gun may deter suspects from responding in a situation where officer safety or the public safety was threatened. *Id.* at 656.

**{¶29}** The *Quarles* Court explained that "[t]he police in this case, in the very act of apprehending a suspect, were confronted with the immediate necessity of ascertaining the whereabouts of a gun which they had every reason to believe the suspect had just removed from his empty holster and discarded in the supermarket." *Id.* at 657. The Court held that "if the police are required to recite the familiar *Miranda* warnings before asking the whereabouts of the gun, suspects in Quarles' position might well be deterred from responding." *Id.* The Court concluded that, "police officers can and will distinguish almost instinctively between questions necessary to secure their own safety or the safety of the public and questions designed solely to elicit testimonial evidence from a suspect." *Id.* at 658-659.

**{¶30}** Contrarily in this case, the only fact known to Officers Wharry and Villaplana was that Officer Wharry observed Appellant flee shortly after he heard what he believed to be a gunshot coming from one block away from the location where he was patrolling. ShotSpotter did not indicate a gunshot. Officer Wharry testified that he observed a black male walking towards him on Auburndale and watched him flee upon seeing him in his police car. The victim in *Quarles* identified the defendant as the man who raped her, approached officers with this information, described the defendant, and saw him enter the supermarket with a gun. The officer entered the grocery store, identified the defendant from the victim's description, and saw an empty shoulder holster on the defendant after the victim had told him that she saw the defendant enter the store with a gun.

{¶31} Further distinguishable in the instant case, Officer Wharry stopped Appellant at Conroy's, had Appellant put his hands in the air, identified himself, and patted Appellant down for weapons. He found no weapons. Unlike the statement by the victim in *Quarles* that she saw the defendant with a gun, and the empty gun holster that the police officer observed on the defendant, no such evidence or indication existed in this case that Appellant had a gun. Officer Wharry nevertheless placed Appellant in the back of his patrol car. At this point, there appeared to be no threat to Officer Wharry, he no longer had reasonable suspicion that Appellant had a gun, and he detained Appellant after assuring himself that Appellant did not have a weapon.

{¶32} Further, while he placed Appellant in the back of the patrol car, Officer Wharry did not handcuff Appellant. Officer Villaplana arrived and while Appellant remained in the backseat of the police car, Villaplana and Wharry retraced Appellant's steps and found a Bluetooth speaker and the hat that Wharry saw Appellant wearing. They returned to the police car. At this point, there was no threat to Officers Wharry and Villaplana from Appellant. He was seated in the back of the police car, had already been frisked, and no weapons were found.

{¶33} Officer Villaplana then decided to question Appellant before giving him *Miranda* warnings. He told Appellant that Officer Wharry heard a gunshot and then saw Appellant flee. (Mot. to Supp. Tr. at 17). Officer Villaplana testified that he then told Appellant that due to the children and people outside near them, it would be in everyone's best interest for Appellant to let them know where the gun was, if he dropped a gun. (Mot. to Supp. Tr. at 17). Appellant then stated that "hypothetically if there was a gun, it was under these logs a few houses away from Conroy's." (Mot. to Supp. Tr. at 17).

{¶34} Again, at this point, no immediate threat existed toward the officers, they had not seen a gun on or near Appellant, they had no information that Appellant had a gun, and the only fact they had was that Officer Wharry believed he heard a gunshot and Appellant fled upon seeing a police officer in a police car. Appellant should have been Mirandized.

{¶35} There is an argument that while Appellant presented no immediate threat to the police, a threat to public safety existed because a gun was outside and unattended. However, in *Quarles,* the victim approached the police, identified the defendant as the

man who had just raped her, told officers that she saw the defendant with a gun, and she saw him enter a grocery store with a gun. The officer also observed the defendant with an empty shoulder holster on him once inside the store. Further, the gun was located in an empty carton inside the confines of the store. When asked, the defendant indicated that he owned the gun.

{¶36} Here, no one observed Appellant do anything other than run the opposite way from a police officer after Officer Wharry drove near an area from which he believed he heard a gunshot. Officer Wharry's pat down of Appellant revealed no gun or weapon. Appellant was nevertheless placed in the police car without handcuffs. Upon questioning without *Miranda* warnings, Appellant admitted that he fired a gun earlier in the day and a gun was subsequently found hidden under some logs two houses away from Conroy's Party Shop. Appellant never took ownership of the gun and no one saw him with a gun.

{¶37} Further, Officer Villaplana is asked by the prosecution at the suppression hearing if he had any other discussion with Appellant pre-*Miranda* warnings. He testified: "I – not really, no." (Mot. to Supp. At 17). However, later in direct examination, he testified that pre-*Miranda* warnings, he had also asked Appellant if he had fired a gun at any time during that day and Appellant affirmatively responded. (Mot. to Supp. Tr. at 20).

{¶38} On cross-examination, Officer Villaplana testified that three statements were made by Appellant in response to questions he had asked prior to administering *Miranda* warnings to Appellant. The first was whether he had handled fireworks that day, which Villaplana explained may show up as gunshot residue on a residue test. (Mot. to Supp. Tr. at 22). The second question was whether Appellant had fired a gun that day, and the third question was in response to Officer Villaplana stating that it would be in everyone's best interest to tell him where the gun was, if Appellant had dropped the gun. (Mot. to Supp. Tr. at 23).

{¶39} A further issue with the motion to suppress is the trial court's judgment entry denying the motion. The trial court set forth the following in its decision:

> Officer Wharry testified that a gun was noticed in the rear of the vehicle in plain view. Further, he testified that this raised his awareness regarding public safety, given the fact that he was responding to hearing a gun shot and that the Defendant ran when Officer Wharry attempted to talk to him,

the Court finds that the public safety of the Officer and of the public warrants additional questions as asked in this matter.

(Sept. 23, 2021 J.E.).

**{¶40}** No facts exist in this case about a gun found in plain view in a car. Appellant was on foot when stopped and he was placed in Officer Wharry's police car. No other car was involved in this case and the only gun found here was located under some logs. Accordingly, the trial court's factual findings are not supported by competent, credible evidence. Some of them are clearly incorrect.

**{¶41}** Consequently, we find merit to Appellant's first assignment of error. Since Appellant's statements concerning a firearm were made in response to an unlawful interrogation in violation of *Miranda*, Appellant's statements about the location of the gun, that he had fired a gun that day, and the gun itself, were obtained illegally and are therefore fruit of the poisonous tree.

**{¶42}** We hold that the public safety exception, as analyzed above, did not apply because the officers' cause for suspicion was dispelled after he frisked Appellant, found no gun on his person, and had no other corroborating evidence that Appellant had committed a crime. If not for Appellant's answers and statements made during interrogation, there would be no evidence that Appellant committed a crime.

**{¶43}** Accordingly, we find that Appellant's first assignment of error has merit.

**{¶44}** In his second assignment of error, Appellant asserts:

**The trial court erred in entering a judgment of conviction for appellant's R.C. 2941.145 enhanced firearm specification attached to weapons under disability.**

**{¶45}** Appellant first asserts that the State failed to prove under R.C. 2941.145(D) that he displayed, brandished, or indicated that he had or used a firearm to commit the offense. He asserts that the State tried to prove this by establishing that he fired the gunshot that Officer Wharry heard coming from near Auburndale. However, Appellant submits that no one witnessed the gunshot, no one saw him with a gun, he never admitted to possessing a gun, and Youngstown's ShotSpotter acoustic gunshot locations system did not indicate that a gunshot occurred on the relevant date.

Case No. 22 MA 0015

**{¶46}** Appellant's second assertion is that the trial court erred denying his Crim. R. 29 motion for acquittal and "contravened" R.C. 2929.14(B)(1)(e) when it sentenced him on the 54-month firearm specification enhancement. He contends that the trial court sentenced him without evidence that he had a prior conviction of at least a second-degree felony and less than five years elapsed since he was released from prison or post-release control.

**{¶47}** Since we find merit to Appellant's first assignment of error, his second assignment of error is rendered moot.

**{¶48}** Accordingly, we reverse the trial court's judgment, vacate Appellant's convictions and sentence, and remand this case to allow the prosecution the opportunity to proceed without any statements made by Appellant or evidence discovered pre-*Miranda*, including the gun itself.

Waite, J., concurs

D'Apolito, P.J., concurs

Case No. 22 MA 0015

---

For the reasons stated in the Opinion rendered herein, the first assignment of error is sustained and his second assignment of error is moot. It is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is reversed. Appellant's convictions and sentence are vacated. We hereby remand this matter to the trial court to allow the prosecution the opportunity to proceed without any statements made by Appellant or evidence discovered pre-*Miranda*, including the gun itself, and for further proceedings according to law and consistent with this Court's Opinion. Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**