**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 15a0321n.06

Case No. 13-5593

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
May 01, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| LESLIE ASHMORE, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | OPINION |
| | ) | |

BEFORE: MERRITT, MOORE, and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** Leslie Ashmore, a convicted felon, was charged with two counts of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Count One related to two firearms found in Ashmore's constructive possession on October 7, 2011, and Count Two related to a firearm found in Ashmore's constructive possession on October 20, 2011. A jury acquitted Ashmore on Count One, but convicted him on Count Two. Ashmore filed a post-trial motion to dismiss Count Two, arguing that the government, at trial, improperly introduced evidence that had been suppressed by the district court. The district court denied Ashmore's motion to dismiss. Ashmore appeals the district court's denial of the motion to dismiss, its denial of his motion to suppress, and the sentence imposed, and he seeks dismissal of Count Two with prejudice. We **AFFIRM** the

district court's denial of Ashmore's motion to dismiss, **REVERSE** the district court's denial of

Ashmore's motion to suppress, **VACATE** Ashmore's conviction, and **REMAND** for a new trial.

I.

A.

On October 7, 2011, an officer with the Kingsport Police Department ("KPD") responded

to a call from the Super 8 Motel on Lynn Garden Drive in Kingsport, Tennessee, regarding a

welfare check for a person reportedly passed out inside of a vehicle. The officer found Leslie

Ashmore asleep inside a silver Buick LeSabre. The officer noticed Ashmore's constricted pupils

and asked him to perform a variety of field sobriety tests. An eventual search of Ashmore's

person uncovered what appeared to be crack cocaine, drug paraphernalia, and a large amount of

cash. An eventual search of the Buick uncovered drug paraphernalia and two firearms found

inside a lock box to which Ashmore had the key. Ashmore was charged with various state drug

and weapon offenses. These state charges were ultimately dismissed, however, due to ensuing

federal charges.

Based on the evidence obtained by the KPD on October 7, 2011, a federal criminal

complaint and arrest warrant were issued for Ashmore on October 20, 2011. That same day,

officers with the KPD and special agents with the Bureau of Alcohol, Tobacco, Firearms and

Explosives ("ATF"), led by Special Agent Jamie Jenkins ("Agent Jenkins"), executed the arrest

warrant. The KPD advised Agent Jenkins that Ashmore had a violent criminal history,

dangerous tendencies, and a history of encounters with local law enforcement. As such, a team

of 10 to 20 officers, including KPD's SWAT team, was deployed to apprehend Ashmore.

In an effort to locate Ashmore, the team directed a confidential source to arrange to

purchase crack cocaine from Ashmore. Ashmore and the confidential source arranged to meet at

a Wal-Mart on Stone Drive in Kingsport.  Officers observed Ashmore exit the Wal-Mart with a white female and get into a Cadillac.  The officers conducted a traffic stop on the Cadillac when it left Wal-Mart; the white female, Misty Hutchins, was driving, and Ashmore was in the passenger seat.  The officers ordered Hutchins out of the vehicle and immediately arrested her.

Officers ordered Ashmore out of the vehicle, and he complied.  Armed SWAT team officers then approached Ashmore, immediately took him to the ground, and handcuffed him.  After Ashmore was handcuffed by other officers, Agent Jenkins approached, identified himself, and informed Ashmore about the federal arrest warrant.  Agent Jenkins testified at a later suppression hearing that, at this point, he asked Ashmore if he "had any firearms on his person or in his car or any other dangerous items" and if his fingerprints would be on any weapons found "like there were on the two guns found a couple of weeks earlier."  Ashmore responded that the car "possibly" or "probably" contained a revolver that belonged to his wife.  It is undisputed that Agent Jenkins had not advised Ashmore of his *Miranda* rights prior to asking this question.  Agent Jenkins then stepped aside to report that Ashmore had been arrested; meanwhile, a KPD officer, Hank McQueen, requested and obtained Ashmore's consent to search the vehicle.

An officer escorted Ashmore to a police cruiser,[1] and Agent Jenkins advised Ashmore of his *Miranda* rights.  According to Agent Jenkins' suppression hearing testimony, he then asked Ashmore if he was a convicted felon and whether he knew that he could not lawfully possess firearms.  Ashmore responded affirmatively to each of those questions.  Agent Jenkins asked Ashmore whether he used illegal narcotics, to which Ashmore responded that he smoked crack cocaine daily and took pain pills.  By this time, the officers searching the vehicle had "immediately" located a weapon under the driver's seat.  According to Agent Jenkins, the

---

[1]It is unclear from Agent Jenkins' testimony who escorted Ashmore to the police cruiser.

firearm was in a location where it would have been more accessible to the front passenger than to the driver. In response to questioning, Ashmore stated that the firearm was loaded and that the firearm belonged to his wife. Various drugs and drug paraphernalia were also found on Ashmore's person and in the vehicle.

B.

In April 2012, a federal grand jury re-indicted Ashmore on two counts of possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Count One related to the two firearms found on October 7, 2011, while Count Two related to the firearm found on October 20, 2011.

On July 31, 2012, Ashmore moved to suppress any statements he made to law enforcement officers on October 20, 2011, before he was advised of his *Miranda* rights. Ashmore argued that, before he received *Miranda* warnings, he had been questioned "about whether any guns were in the car." The government argued that, under *Miranda*'s "public safety" exception, suppression was not required for Ashmore's answer to the pre-*Miranda* question about whether he possessed any firearms or other dangerous items.

A magistrate judge conducted an evidentiary hearing on the motion on September 28, 2012, and found that, before Ashmore received *Miranda* warnings on October 20, 2011, "Agent Jenkins asked defendant, 'Do you have anything dangerous or any weapons on you or in the car?' To that question defendant responded, 'My wife may have a gun in the car.'" *United States v. Ashmore*, No. 2:12-CR-34, 2012 WL 5450447, at *3 (E.D. Tenn. Oct. 2, 2012). Noting that Ashmore had already been handcuffed and removed from the vicinity of the Cadillac, the magistrate judge concluded that Agent Jenkins could not have had any objectively reasonable fear for his safety. *Id.* at *5 (relying on *United States v. Williams*, 483 F.3d 425 (6th Cir. 2007)).

Accordingly, the magistrate judge rejected the government's argument that the public safety exception applied, and recommended suppression of Ashmore's "statement subsequent to his arrest." *Id.* The magistrate judge did not recommend suppression of the gun itself[2] because (1) the vehicle driven by Hutchins could have been lawfully searched without a warrant and with no further showing of probable cause, and (2) the firearm would, in any event, have been inevitably discovered. *Id.* (citing *New York v. Belton*, 453 U.S. 454 (1981), *superseded by Arizona v. Gant*, 556 U.S. 332 (2009) and *United States v. White*, 871 F.2d 41 (6th Cir. 1989) *superseded by Arizona v. Gant*, 556 U.S. 332 (2009)).

The government filed a motion for clarification of the report and recommendation, on the grounds that the report did not explicitly state that Ashmore's post-*Miranda* statement was not excluded from the government's proof at trial. The magistrate judge then issued a supplemental report and recommendation, recommending that Ashmore's motion to suppress his statements to Agent Jenkins after being *Mirandized* be denied. *United States v. Ashmore*, No. 2:12-CR-34, 2012 WL 5450449, at *2 (E.D. Tenn. Oct. 11, 2012). Specifically, the magistrate judge found:

> The vehicle was searched. Whether it was searched incident to defendant's arrest, or pursuant to the consent obtained by Officer McQueen is beside the point; in either event, it was lawfully searched and the firearm found.
>
> After the firearm was found, and as noted above, Agent Jenkins *Mirandized* defendant. Agent Jenkins asked defendant if the gun was loaded, and defendant responded that it was. He also told Jenkins that he smoked crack daily, took various pain pills, and knew that as a convicted felon he could not lawfully possess firearms.
>
> A "follow-up" incriminating statement made after a previous un-warned statement, even if the follow-up statement was made after administration of a

---

[2]Ashmore's motion to suppress, and memorandum in support, did not seek to suppress the gun itself—only his statements. At the suppression hearing, however, Ashmore orally moved to suppress the gun as fruit of the poisonous tree.

*Miranda* warning, must be suppressed if the second, albeit warned, statement inexorably flowed from the earlier statement. It is the "cat-out-of-the-bag" situation. But that is not the case here. The gun itself was lawfully found. Jenkins' question regarding whether the gun was loaded logically would have been asked even if the first question had never been asked. In other words, the second question was independent of, and legally unrelated to, Jenkins' first question to defendant. Jenkins' post-*Mirandized* question was "purged of the [initial] taint." *Wong Sun v. United States*, 371 U.S. 471, 487-88[ ](1963).

*Id.* at *1-2.

Ashmore objected to the magistrate judge's conclusion, arguing that all of his statements, as well as the firearm itself, should be suppressed because Agent Jenkins did not provide *Miranda* warnings before asking his initial question. After conducting *de novo* review, the district court adopted the magistrate judge's report and recommendations—i.e., it suppressed only Ashmore's pre-*Miranda* statement ("that the car might contain a revolver belonging to his wife") and denied Ashmore's suppression motion in all other respects. *United States v. Ashmore*, No. 2:12-CR-034, 2012 WL 5450446, at *5 (E.D. Tenn. Nov. 7, 2012).

Ashmore's trial began and ended on December 13, 2012. Agent Jenkins testified about Ashmore's October 20, 2011, arrest and about the conversation he had with Ashmore after advising him of his *Miranda* rights. Agent Jenkins testified that, during that conversation, Ashmore stated the firearm in the vehicle belonged to his wife, that the firearm was loaded, that the firearm was a .38 caliber revolver, that Ashmore was a convicted felon, and that he knew he was not supposed to possess firearms. Ashmore did not object during this testimony. Instead, during cross-examination, defense counsel sought to impeach Agent Jenkins on the grounds that, when he testified during the suppression hearing, Agent Jenkins had not specifically mentioned that Ashmore had identified the caliber of the revolver.

On re-direct examination, Agent Jenkins explained that he had taken notes while or immediately following talking with Ashmore following his arrest, and that the notes showed that he never asked Ashmore about the caliber of the firearm, but Ashmore had volunteered that there was a loaded .38 caliber revolver in the car.

The jury acquitted Ashmore of unlawful firearm possession on October 7, 2011 (Count One), and convicted Ashmore of unlawful firearm possession on October 20, 2011 (Count Two). Ashmore then filed a motion to dismiss Count Two with prejudice, complaining that the government had violated the district court's suppression ruling because: (1) Agent Jenkins testified at trial that Ashmore told him the firearm was a .38 caliber revolver, and (2) Agent Jenkins had not mentioned the caliber of the weapon during the suppression hearing and, even if Ashmore had made such a statement, he did so before *Miranda* warnings had been given. The government responded in opposition, emphasizing that the caliber of the firearm was referenced in Agent Jenkins' contemporaneous notes and that Agent Jenkins testified at trial that he made those notes while speaking with Ashmore after having advised him of his *Miranda* rights.

The district court denied Ashmore's motion to dismiss, crediting Agent Jenkins' trial testimony that Ashmore had been *Mirandized* before he made the statements that Agent Jenkins recounted at trial. *United States v. Ashmore*, No. 2:12-CR-034, 2013 WL 256752, at *2 (E.D. Tenn. Jan. 23, 2013). The district court found that, contrary to Ashmore's assertions, "there were no 'government actions' at trial which 'circumvented and ignored the court's previous rulings.'" *Id.* The court also noted that Ashmore had not objected to Agent Jenkins' testimony that Ashmore mentioned the caliber of the firearm, that Ashmore had not disputed the government's assertion that the basis for that testimony was in the notes provided during

discovery, and that the defense had instead elected only to cross-examine Agent Jenkins about the veracity of his testimony, rather than objecting to it. *Id.* at *2-3.

On April 30, 2013, the district court sentenced Ashmore to 240 months of imprisonment, within the advisory guidelines range applicable to him, and five years of supervised release. This timely appeal followed.

II.

A.

We first address Ashmore's contention that the government violated the district court's suppression order when it presented Agent Jenkins' trial testimony regarding the caliber of the weapon. Because Ashmore did not object during Agent Jenkins' testimony, we review the district court's denial of Ashmore's subsequent motion to dismiss for plain error.[3] *See* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."); *see also Meador v. Cabinet for Human Res.*, 902 F.2d 474, 477 (6th Cir. 1990) ("A federal appellate court can resolve an issue not passed on below where the proper resolution is beyond any doubt or where injustice . . . might otherwise result.") (internal quotation marks omitted).

At the suppression hearing, Agent Jenkins testified that he asked Ashmore a single, compound pre-*Miranda* question: if he "had any firearms on his person or in his car or any other

---

[3]We discern no support for Ashmore's argument, raised for the first time in his reply brief, that he timely objected at trial. Rather than object, Ashmore instead attempted to demonstrate, during cross-examination, that when he testified during the suppression hearing, Agent Jenkins had not specifically mentioned that Ashmore had identified the caliber of the revolver. There is only one reasonable reading of defense counsel's questions on cross and re-recross: defense counsel was trying to impeach Agent Jenkins by suggesting that he, for the first time at trial, was claiming that Ashmore told him that the firearm was a .38 caliber. Nothing in defense counsel's questioning suggests that he was arguing that the court's suppression ruling was violated.

dangerous items" and if his fingerprints would be on any weapons found "like there were on the two guns found a couple of weeks earlier." Ashmore responded that the car "possibly" or "probably" contained a revolver that belonged to his wife. Agent Jenkins further testified that he asked Ashmore a slew of questions post-*Miranda*: whether he was convicted felon, whether he knew that he could not lawfully possess firearms, whether he used illegal narcotics, and—after the firearm had been found—whether the weapon was loaded.

At trial, Agent Jenkins testified to the following:

[The government] Okay. And where was he taken after he was placed under arrest?

[Agent Jenkins] Immediately he was walked back to a transport unit, a Narc Unit with the Kingsport Police Department.

[The government] Okay. And was he placed inside the vehicle, or did he stay outside?

[Agent Jenkins] At some point he was. I'm not sure exactly what point. I had a conversation with him at that one point and at that time he was outside of the vehicle.

[The government] Now at some point did you have a conversation with Mr. Ashmore?

[Agent Jenkins] Yes, I did.

[The government] Okay. *Did you read him his Miranda [r]ights before you had that conversation?*

[Agent Jenkins] Yes, I did.

[The government] And will you tell the Jury about, about that conversation?

[Agent Jenkins] Sure. *Mr. Ashmore stated to me that the firearm in the car belonged to his wife. He also stated to me that it was loaded, and that it was [a]*

*38 caliber revolver.* He also stated to me that he was a convicted felon, and that he knew that he was not supposed to possess firearms.

Agent Jenkins' trial testimony ostensibly complies with the district court's suppression order in that it does not allude to any question posed or response made before Ashmore was *Mirandized*. The problem, however, is that Agent Jenkins' trial testimony includes a statement that previously—at the suppression hearing, in the magistrate judge's report and recommendations, and in the district court's suppression order—had consistently been categorized as pre-*Miranda*. That is, Agent Jenkins represented in his trial testimony—uncorrected by the government—that *all* of Ashmore's alleged statements occurred post-*Miranda*.

B.

Agent Jenkins' trial testimony also presents an additional problem: it may or may not be consistent with the version of the facts Agent Jenkins has presented elsewhere. In this case, there is a clear disconnect between what information the parties had in their possession leading up the Ashmore's trial and what information was communicated to the magistrate judge and the district court in the lead-up to trial. To reach this conclusion, we need only note that both the government and the defense now rely on the same documents to support their conflicting positions on appeal: Agent Jenkins' contemporaneous notes and grand jury testimony.

At trial, on re-direct examination, and in reaction to Ashmore's questions on cross-examination, the government had Agent Jenkins explain that he had taken notes while or immediately following talking with Ashmore following his arrest, and that the notes showed that while he never asked Ashmore about the caliber of the firearm, Ashmore had volunteered that there was a loaded .38 caliber revolver in the car. Likewise, in its response in opposition to Ashmore's motion to dismiss, the government argued that the caliber of the firearm was

referenced in Agent Jenkins' contemporaneous notes and that Agent Jenkins testified at trial that he made those notes while speaking with Ashmore after having advised him of his *Miranda* rights. Thus, the government argues, Ashmore should have known Agent Jenkins could testify to the caliber of the firearm—even though he did not so testify at the suppression hearing.

Conversely, Ashmore argued in his motion to dismiss that Agent Jenkins had not mentioned the caliber of the weapon during the suppression hearing, and, even if Ashmore had made such a statement, he did so before *Miranda* warnings had been given. Ashmore further argued that, "[g]iven the previous factual findings and rulings by the [c]ourt, counsel for Mr. Ashmore were surprised by the government's questioning and Agent Jenkins' testimony regarding Mr. Ashmore stating that his wife had a .38 revolver in the car and that Mr. Ashmore made the statement before the firearm was seized by law enforcement officers." Now, on appeal, Ashmore concedes that he referenced the caliber of the weapon, but asserts that he did so pre-*Miranda*. Ashmore contends that Agent Jenkins' contemporaneous notes taken after Ashmore's arrest (referenced by the government at trial) and his grand jury testimony (furnished by the government during discovery as *Jencks*[4] material and referenced in the government's response in opposition to Ashmore's motion to dismiss) support this conclusion.

Neither the government, nor Ashmore, nor Agent Jenkins referenced these documents or made them available to the magistrate judge or district court at any time prior to Agent Jenkins' testimony at trial—as the district court noted in its memorandum and order denying Ashmore's motion to dismiss. *Ashmore*, 2013 WL 256752, at *2. Likewise, these documents also have not been produced as evidence on appeal. The parties seem generally to agree, however, on the content of these documents.

---

[4]18 U.S.C. § 3500.

C.

> Under the plain-error standard, "an appellate court may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings."

*United States v. Brooks*, 628 F.3d 791, 797 (6th Cir. 2011) (quoting *United States v. Marcus*, 560 U.S. 258, 262 (2010)).  Applying this standard, we find the district court did not plainly err in denying Ashmore's motion to dismiss.

Even assuming the district court erred in denying the motion (first prong), that error is neither clear nor obvious (second prong).  Agent Jenkins' notes and grand jury testimony do not fully support either the government's position on appeal or Ashmore's position on appeal.  This is because Agent Jenkins' notes and grand jury testimony exhibit a level of specificity that is not apparent in his suppression hearing testimony or his trial testimony.  Thus, when the magistrate judge recommended to the district court suppression of the pre-*Miranda* statements, the magistrate judge was not aware that Ashmore ever referenced the caliber of the weapon.  Because the magistrate judge was unaware of this information, he did not make specific findings of fact as to when Ashmore referenced the caliber of the firearm.

The end result is that Agent Jenkins' trial testimony about the caliber of the weapon does not clearly fall inside or outside the district court's suppression of pre-*Miranda* statements.  The magistrate judge and the district court discerned only one pre-*Miranda* statement: "that the car might contain a revolver belonging to [Ashmore's] wife." *Ashmore*, 2012 WL 5450446, at *5.[5]

---

[5]Although Ashmore has not raised this argument on appeal, we note that in both his notes and his grand jury testimony, Agent Jenkins claimed that Ashmore *twice* said that the firearm belonged to his wife.  Jenkins asserted that Ashmore said it once pre-*Miranda* (there might be a .38 caliber

Similarly, the magistrate judge discerned only one post-*Miranda* statement related to the firearm: that the firearm was loaded. *Ashmore*, 2012 WL 5450449, at *2. The district court, in adopting the report and recommendations, did not explicitly identify any post-*Miranda* statements; rather, the district court generally ruled any pre-*Miranda* statements were suppressed and all post-*Miranda* statements were allowed. *Ashmore*, 2012 WL 5450446, at *5.

There is some logic to Ashmore's argument that a chronological reading of Agent Jenkins' notes and grand jury testimony suggests that Ashmore referenced the caliber of the firearm pre-*Miranda*. That is, Ashmore told Agent Jenkins the caliber of the firearm at the same time he told Agent Jenkins the firearm belonged to his wife—in response to Agent Jenkins' initial question, pre-*Miranda*. Nonetheless, we need not resolve this question of what Ashmore said and when. Even assuming Ashmore referenced the caliber of the weapon pre-*Miranda*, and Agent Jenkins' testimony to that effect violated the court's suppression order, Ashmore did not object during Agent Jenkins' testimony. Ashmore concedes that Agent Jenkins' notes and grand jury testimony, both of which reference the caliber of the weapon, were provided to him during discovery. As such, he cannot now claim to have been "surprised" by Agent Jenkins' trial testimony concerning the caliber of the weapon.

In sum, because it is not clear whether the caliber statement was pre-*Miranda* or post-*Miranda*—and because, critically, Ashmore did not object in order to allow the district court to

---

revolver belonging to my wife in the car) and again post-*Miranda* (the firearm is loaded and it belongs to my wife). This version of events, if true, would render the district court's suppression ruling almost completely meaningless. The district court would have suppressed a pre-*Miranda* statement (the weapon belongs to Ashmore's wife) that, under the suppression order, could still have been admitted into evidence because it was allegedly repeated post-*Miranda*. We question why the government—despite filing a motion before the magistrate judge seeking clarification that post-*Miranda* statements were admissible, but curiously neglecting to specify what these alleged post-*Miranda* statements were—failed to inform the district court of this redundancy.

make that determination—any error that might have been made by the district court could not have been obvious. The admission of Agent Jenkins' testimony as to Ashmore's reference to the caliber of the firearm therefore cannot amount to plain error.

III.

We next address Ashmore's claim that his post-*Miranda* statements should have been suppressed because of improper pre-*Miranda* questioning by law enforcement.[6] To briefly recap, the KPD, generally familiar with Ashmore—due in part to his October 11, 2011, arrest— believed him to be armed and dangerous. After the KPD imparted this information to the ATF, Agent Jenkins deployed a team of 10 to 20 officers, including KPD's SWAT team, to apprehend Ashmore. The SWAT team surrounded the vehicle in which Ashmore was a passenger. Ashmore exited, was taken to the ground, and then handcuffed. Ashmore was then questioned by Agent Jenkins about the presence of weapons in the vehicle; then, after a break of mere minutes and after being provided *Miranda* warnings, Ashmore was again questioned more extensively by Agent Jenkins.

In reviewing the "denial of a motion to suppress, we review [the district court's] conclusions of law and application of the law to the facts . . . de novo." *United States v. Bowers*, 594 F.3d 522, 525 (6th Cir. 2010) (alteration in original) (quoting *United States v. Hardin*,

---

[6]We find no basis for the government's claim that Ashmore has waived this argument. The government's waiver argument is based on its incorrect assertion that, before the district court, Ashmore "only argu[ed] generally that his pre-*Miranda* statements should be suppressed." In reality, Ashmore argued in his motion to suppress that no *Miranda* warnings were ever given. The government, in response, did not contend any *Miranda* warnings were ever given. Rather, it relied on the public safety exception to *Miranda*. The magistrate judge found Agent Jenkins' suppression hearing testimony that he *Mirandized* Ashmore credible, but rejected the government's argument that the public safety exception applied to the facts of this case.

539 F.3d 404, 416 (6th Cir. 2008) (internal quotation marks omitted)). We review the district court's factual findings for clear error. *Id*.

The Supreme Court's decisions in *Oregon v. Elstad*, 470 U.S. 298 (1985) and *Missouri v. Seibert*, 542 U.S. 600 (2004), address the admissibility of post-*Miranda* admissions relating to statements made by a defendant prior to receiving *Miranda* warnings. In *Elstad*, the defendant was interrogated in his home without being *Mirandized*, where he first confessed to a crime. 470 U.S. at 301. He was then taken to the police station, given proper warnings, and again confessed. *Id*. The issue presented in that case was whether the second confession should not have been admitted because it was the fruit of the first tainted confession. The Supreme Court held the second confession admissible. The Court reasoned that "absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion." *Id*. at 314. When the pre-*Miranda* statement is coerced, however, "the time that passes between confessions, the change in place of interrogations, and the change in identity of the interrogators all bear on whether that coercion has carried over into the second confession." *Id*. at 310. Applying this test, the Court held the change in location and circumstances, the lack of a coercive environment for either interrogation, and the lack of evidence suggesting that police exploited the suspect's unwarned admission to secure the second admission, supported its conclusion that the second confession was not tainted by the first confession. *Id*. at 310, 315.

In *Seibert*, the Court addressed a similar issue—whether a police officer's interrogation strategy of eliciting pre-*Miranda* statements, *Mirandizing* the suspect "midstream," and then asking similar questions so the suspect will restate pre-*Miranda* admissions is proper. A majority of the Court rejected this strategy and held that, in this situation, all statements—pre-

and post-*Miranda*—must be suppressed. *Seibert*, 542 U.S. at 604 (plurality opinion); *id*. at 618 (Kennedy, J., concurring). In doing so, five justices recognized that "[t]he object of question-first is to render *Miranda* warnings ineffective by waiting for a particularly opportune time to give them, after the suspect has already confessed." *Id.* at 611; *see also id.* at 620 (Kennedy, J., concurring) ("As Justice Souter points out, the two-step technique permits the accused to conclude that the right not to respond did not exist when the earlier incriminating statements were made."). As the plurality of four justices explained, "it would ordinarily be unrealistic to treat two spates of integrated and proximately conducted questioning as independent interrogations subject to independent evaluation simply because *Miranda* warnings formally punctuate them in the middle." *Id*. at 614; *see also id*. at 620-21 (Kennedy, J., concurring) ("The technique used in this case distorts the meaning of *Miranda* . . . ."). Indeed, consistent with *Elstad*, the Court recognized that *Miranda* warnings generally will be ineffective in a successive interrogation that is "close in time and similar in content" to the pre-*Miranda* confession. *Id*. at 613; *see also id*. at 622 (Kennedy, J., concurring) (noting that "a substantial break in time and circumstances between" pre- and post-*Miranda* statements may cure any failure to give pre-*Miranda* warnings).

The four-justice plurality and Justice Kennedy, however, applied different tests to determine whether a post-*Miranda* confession should be suppressed because of improper pre-*Miranda* questioning. The plurality explained that "[t]he threshold issue when interrogators question first and warn later is . . . whether it would be reasonable to find that in these circumstances the warnings could function 'effectively' as *Miranda* requires." *Id*. at 611-12. In making this determination, the plurality set forth "a series of relevant facts that bear on whether *Miranda* warnings delivered midstream could be effective enough to accomplish their object":

(1) the completeness and detail involved in the first interrogation; (2) the overlapping content of the pre- and post-*Miranda* statements; (3) the timing and setting of the interrogations; (4) the continuity of police personnel during the two interrogations; and (5) the degree to which the interrogator's questions treated the second round as continuous with the first. *Id.* at 615.

In a concurring opinion, Justice Kennedy rejected the plurality's objective approach for one that turns on whether "the two-step interrogation technique was used in a calculated way to undermine the *Miranda* warning." *Id.* at 622 (Kennedy, J., concurring). Under this approach, "[t]he admissibility of postwarning statements should continue to be governed by the principles of *Elstad* unless the deliberate two-step strategy was employed." *Id.* If the two-step strategy is used, post-*Miranda* statements relating to the substance of pre-*Miranda* statements must be excluded unless curative measures—such as "a substantial break in the time and circumstances" between pre- and post-*Miranda* statements or an additional warning covering the inadmissibility of pre-*Miranda* statements—are taken before the post-warning statement is made. *Id.*

In the present case, neither the magistrate judge nor the district court considered *Elstad* and *Seibert* in concluding that Ashmore's post-*Miranda* statements could be admitted against him. In his first report and recommendation, the magistrate judge recommended that Ashmore's "motion to suppress his statement subsequent to his arrest should be granted." *Ashmore*, 2012 WL 5450447, at *5. But as the government noted in its subsequent motion for clarification, Ashmore made statements after his arrest both pre-*Miranda* and post-*Miranda*. Accordingly, the government sought clarification that Ashmore's "post-*Miranda* statement [was] not excluded from the [government's] proof at trial." The magistrate judge, in granting the government's request, recommended admission of post-*Miranda* statements, and the district court adopted this recommendation. Thus, the government's request for admission of post-

*Miranda* statements was granted even though the government had not made an evidentiary showing under *Elstad* and *Siebert* that admission was appropriate. This was error. *See Seibert*, 542 U.S. at 608 n.1 ("[T]he burden of showing admissibility rests, of course, on the prosecution. The prosecution bears the burden of proving, at least by a preponderance of the evidence, the *Miranda* waiver, and the voluntariness of the confession." (alteration in original) (citations and internal quotation marks omitted)). Applying both *Elstad* and *Seibert*, we find that the post-*Miranda* statements made by Ashmore about the weapon should have been excluded. *See United States v. Pacheco-Lopez*, 531 F.3d 420 (6th Cir. 2008) (declining to resolve the issue of whether the plurality or concurring approach in *Siebert* controls because the statement would be suppressed under any applicable framework).[7]

First, Ashmore's post-*Miranda* statements about the weapon should have been suppressed under *Seibert*. Under the plurality's test, all of the factors suggest that Agent Jenkins' question-first, *Mirandize*-later tactic requires suppression of the post-*Miranda* admission. *See Pacheco-Lopez*, 531 F.3d at 428-29 (applying plurality test). As to the first factor, although the questioning was not as detailed as in *Seibert*, Agent Jenkins asked pre-*Miranda* the one compound question relevant to a felon-in-possession charge: is there a gun in the car and are your fingerprints on it? The second, third, and fourth factors favor suppression

---

[7]As this Court has recognized, "there has been some confusion about whether the plurality or concurring opinion controls" in *Seibert*. *Pacheco-Lopez*, 531 F.3d at 427 n.11 (noting circuit split and citing cases that describe the problem with adopting Justice Kennedy's approach); *see also United States v. Wooten*, --- Fed. Appx. ----, No. 13-1566, 2015 WL 794278, at *5 (6th Cir. Feb. 25, 2015) (noting that "this circuit and the First Circuit have avoided ruling on the issue in cases in which the outcome would be the same under either framework"); *United States v. Heron*, 564 F.3d 879, 884 (7th Cir. 2009) (concluding "that the *Marks* [*v. United States*, 430 U.S. 188, 193 (1977)] rule is not applicable to *Seibert*" because "Justice Kennedy's intent-based test was rejected by both the plurality opinion and the dissent"); *United States v. Carrizales-Toledo*, 454 F.3d 1142, 1152 (10th Cir. 2006). But, as in *Pacheco-Lopez*, because the post-*Miranda* evidence should be suppressed under either test, we need not resolve this issue here.

because the pre- and post-*Miranda* questioning was materially the same; the second interrogation followed shortly after the first; the setting of both interrogations was the same; and Agent Jenkins conducted the questioning both times. Finally, under the fifth factor, Agent Jenkins picked his line of questioning up post-*Miranda* right where he left off pre-*Miranda*—he wanted to know what Ashmore knew about the gun that, by that time, had been found. All of this suggests that "the *Miranda* warnings did not 'effectively advise [Ashmore] that he had a real choice about giving an admissible statement' because the unwarned and warned interrogations blended into one 'continuum.'" *Bobby v. Dixon*, 132 S. Ct. 26, 31-32 (2011) (per curiam) (quoting *Seibert*, 542 U.S. at 612, 617); *see also Seibert*, 542 U.S. at 616 (suppressing evidence where "[t]he warned phase of questioning proceeded after a pause of only 15 to 20 minutes, in the same place as the unwarned segment").

Even under the deliberateness test set forth in Justice Kennedy's concurrence, the post-*Miranda* evidence should have been suppressed. Justice Kennedy's test would suppress evidence where "the two-step interrogation technique was used in a calculated way to undermine the *Miranda* warning." *Seibert*, 542 U.S. 622 (Kennedy, J., concurring). In determining whether law enforcement agents deliberately employed the two-step interrogation tactic under this test, courts "consider whether objective evidence and any available subjective evidence, such as an [agent's] testimony, support an inference that the two-step interrogation procedure was used to undermine the *Miranda* warning." *United States v. Barnes*, 713 F.3d 1200, 1205 (9th Cir. 2013) (per curiam) (alteration in original) (quoting *United States v. Williams*, 435 F.3d 1148, 1158 (9th Cir. 2006)); *see also United States v. Capers*, 627 F.3d 470, 479 (2d Cir. 2010) ("[J]oin[ing] [the Fifth, Ninth, and Eleventh] circuits in concluding that a court should review the totality of the objective and subjective evidence surrounding the interrogations in order to determine

deliberateness [under Justice Kennedy's deliberateness test], with a recognition that in most instances the inquiry will rely heavily, if not entirely, upon objective evidence."); *Seibert*, 542 U.S. at 616 n.6 (recognizing that "the intent of the officer will rarely be as candidly admitted as it was here").

Here, prior to the arrest, Agent Jenkins knew that Ashmore was recently found in possession of firearms. He knew Ashmore's criminal history, which indicated he was a felon. (*Id.*) And he knew that Ashmore was sitting in the passenger seat of the car, suggesting that the car was not his. With this knowledge, Agent Jenkins began questioning Ashmore about the presence of weapons in the car and whether his fingerprints would be on any weapons found— just seconds after Ashmore was unexpectedly surrounded by between 10 to 20 armed law enforcement agents, arrested, taken to the ground, and handcuffed. Agent Jenkins has admitted that his inquiry about fingerprints was a "trick" question because no fingerprints had been discovered on the two weapons the KPD officers found on October 7, 2011. Questioning Ashmore about the weapon at this time was unnecessary because, as the district court properly found, Ashmore was already handcuffed, so there was no public safety rationale for the pre-*Miranda* interrogation. *Ashmore*, 2012 WL 5450447, at \*5; *Ashmore*, 2012 WL 5450446, at \*5. Instead, the timing and circumstances suggest that Agent Jenkins was attempting to induce Ashmore to admit pre-*Miranda* that any weapons in the car belonged to him. At the very least, the government has not put forward any evidence to rebut this conclusion. *See, e.g.*, *Capers*, 627 F.3d at 480 (holding, under Justice Kennedy's deliberateness test, "that the government must meet its burden of disproving the deliberate use of a two-step interrogation technique [to undermine the *Miranda* warning] by a preponderance of the evidence").

Then, shortly after the pre-*Miranda* questioning, Agent Jenkins instructed officers to bring Ashmore to a police cruiser. But instead of transporting Ashmore back to the station per the initial plan, Agent Jenkins gave a *Miranda* warning and immediately began asking Ashmore about the weapon again, getting him to repeat his prior admission. The government has identified no need to continue the questioning at the scene of the arrest, just minutes after the pre-*Miranda* interrogation, rather than at the police station. And because Agent Jenkins took no "[c]urative measures . . . designed to ensure that a reasonable person in [Ashmore's] situation would understand the import and effect of the *Miranda* warning and of the *Miranda* waiver," *Seibert*, 542 U.S. 622 (Kennedy, J., concurring), the post-*Miranda* statements about the weapon should therefore have been suppressed.

Second, suppression of the post-*Miranda* statements is also required under *Elstad* because the pre-*Miranda* statements were obtained through "coercion or improper tactics" and the coercion "carried over into the second confession." *Elstad*, 470 U.S. at 308, 310. Again, Agent Jenkins knew there could be a firearm in the car and attempted to elicit an admission from Ashmore that he possessed the firearm prior to *Miranda* warnings by getting him to admit that his prints would be on the gun. And, again, he did so seconds after Ashmore was unexpectedly surrounded by armed agents and a convoy of law enforcement vehicles, taken to the ground, and handcuffed. Thus, the "environment and manner" in which the pre-*Miranda* questioning occurred suggests that the initial admission was obtained through coercion or improper tactics. *Id.* at 305 (recognizing that "[t]he *Miranda* Court . . . presumed that interrogation in certain custodial circumstances is inherently coercive").

"When a prior statement is actually coerced, the time that passes between confessions, the change in place of interrogations, and the change in identity of the interrogators all bear on

whether that coercion has carried over into the second confession." *Id*. at 310. Here, all three of these factors suggest that the coercion carried over: very little time passed between the first confession and second; Ashmore remained in essentially the same place throughout both interrogations; and Agent Jenkins questioned Ashmore both times about the weapon in the car. Under this scenario, the second confession was not "sufficiently an act of free will to purge the primary taint." *Id*. at 306 (quoting *Taylor v. Alabama*, 457 U.S. 687, 690 (1982)) (internal quotation marks omitted); *see also Pacheco-Lopez*, 531 F.3d at 429-30 (suppressing a second confession under *Elstad* because "there was no change in the time or place of the interrogation, or the identity of the interrogators"); *cf. Coomer v. Yukins*, 533 F.3d 477, 490-91 (6th Cir. 2008) (finding suppression not warranted under *Elstad* and *Seibert* because of the changed circumstances, which included a "time lapse of approximately three hours between the written statement in Coomer's apartment and her confession at the police station").

Accordingly, Ashmore's post-*Miranda* statements should also have been suppressed.

IV.

For the foregoing reasons, we **AFFIRM** the district court's denial of Ashmore's motion to dismiss, **REVERSE** the district court's denial of Ashmore's motion to suppress, **VACATE** Ashmore's conviction, and **REMAND** for a new trial.